Case 22-5915, FemHealth USA Inc v. Rickey Williams Jr, et al. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Good morning. May it please the Court. My name is Steve Crampton from the Thomas More Society. I am here on behalf of Appellants Operation Save America, Jason Storms, Brent Buckley, Matt Brock, Coleman Boyd, and Bo Lynham. I make that distinction because, of course, there are other defendants in this case. I would like to reserve four minutes for rebuttal. Fine. Your Honors, the preliminary injunction entered below, pursuant to the Freedom of Access to Clinic Entrances Act, or FACE, is moot because CARIFM voluntarily closed the facility on June 1 of this year. Consequently, the preliminary injunction should be dissolved and vacated in its entirety. Again, the case is predicated solely on a single claim of a FACE violation. FACE, as you know, prohibits acts of force, threats of force, or physical obstruction. This case is predicated solely on physical obstruction. But consider, if you will, even the title of the act, the Freedom of Access to Clinic Entrances. There is no longer a clinic in Mount Juliet, Tennessee. Therefore, there is no entrance and there can be no access that must be protected against. Moreover... Well, doesn't the statute also protect against intimidation because a person is or has been obtaining or providing reproductive health services? Not exactly, I would say, Your Honor. With respect, it protects against only intimidation by means of force, threat of force, or physical obstruction. So without the physical obstruction, you can't get to intimidation, interference, and injury. Moreover, the statute actually defines physical obstruction as a term of art here, meaning only rendering ingress and egress impassable or unreasonably difficult from a facility. So while colloquially we might consider physical obstruction in the abstract as just blocking someone, without a clinic, without a facility, there can be no physical obstruction under FACE. And again, the entire preliminary injunction is predicated on that single cause of action under FACE for physical obstruction. Well, I understand the plaintiff, not the plaintiffs, but the CARE-FM and FEM Health to be suggesting that part of the preliminary injunction should be vacated, but not all of it, and that part of it is still necessary, and that their position also is that this should be resolved in the first instance by the district court. Why are those not perfectly appropriate, notwithstanding what you just said? Certainly. Again, the subsection, there's two subsections, A, which is what CARE-FM claims should survive here, and subsection B, which enjoins entering on the property and so forth, and even CARE-FM concedes that part should be dissolved. But with respect to subsection A, what it reads is defendants are restrained, enjoined, prohibited from physically obstructing, if I may just stop right there, once again, under FACE, without a clinic, there can be no physical obstruction. So that part clearly cannot survive. But then it also goes on, we believe improperly, to say they are enjoined from intentionally intimidating or intentionally interring, which is, I think, a typo, meaning interfering with any person, because that person is or has been obtaining or providing reproductive health services from plaintiff's facility. First, as to that language, we would suggest that there is no authority in the district court to enjoin intentionally intimidating or interfering as a freestanding injunction unrelated to physical obstruction. There is not a case that has been decided under the Freedom of Access to Clinic Entrances Act that is ever so held. And it would be contrary to the rule of construction, which FACE was very careful to include, that says nothing in this act shall be construed to infringe on or interfere with, so to speak. First Amendment rights. To have a freestanding you shall not intimidate or interfere with someone who has, in the past, obtained reproductive health services is so vague and overbroad as to be, I think, on its face, unconstitutional under the First Amendment and simply incapable of being understood. Moreover, go ahead. Are you making these arguments in front of the district court currently? Yes. After? Yes. The time frame here is we learned, somewhat accidentally, that the clinic had closed. We asked Care of Whom's Counsel, is this true? They wouldn't answer. They finally came back and confirmed, several days later, that, yeah, we've, quote, paused in-person services. Well, they've closed the facility, and the announcement says, because abortion is no longer permissible in the state of Tennessee, they couldn't maintain their business. So pause is a euphemism. But we then filed in this court the motion for judicial notice because we have this oral argument already had been set by that time. But my question really is, isn't the district court the proper place to be considering whether to modify the preliminary injunction? And as I understand it from looking at the docket this morning in the district court, there are proceedings pending in the district court on that score. So the question really is, why shouldn't we remand this matter and allow the district court, which will address the various facts that you're bringing in, in the first instance? Sure. And I would suggest, Your Honor, that further delay is itself an injustice here. Secondly, the fact is that we are here today initially because these defendants, our clients, appealed the entirety of the preliminary injunction on the merits before we ever knew that there was closure of a facility. Now you have Karafim conceding that the clinic is closed, that subsection B of the injunction is clearly no longer viable, and trying to hang, if I may, by a thread to the notion that individuals who have never been named, there are no allegations in the complaint that any of our clients or, for that matter, any of the other defendants ever had any improper interaction with these individuals or ever would. There is no likelihood of – I don't think that really answers Judge Moore's question. I'm sorry. Why this court rather than the district court is the appropriate place to deal with any remaining issues? Sure. The injunction was entered in September. We have patiently waited for this moment to actually present argument to this court. But it dismissed the appeal and talked to the district court about it. Which would only delay the proceedings further, Your Honor. With respect, the district court's docket is fairly backed up. We have pending motions to dismiss, which have never even been set for argument or, frankly, acknowledged. We believe the entire injunction was improperly entered in the first place, was without merit. It was a single event that gave rise. But what is the need for urgency at this point if you're saying the Part B, you're saying, is moved? Yes. So it's not affecting you. Yes. And Part A, you're saying, really doesn't have any impact because you're saying you don't have – there's no facility here. No, I'm not exactly saying that. I'm saying that a freestanding injunction against intimidating or interfering with some unknown persons is a harm to our clients, Your Honor. Every injunction, of course, against natural persons infringes or takes away, restricts their rights to some degree. This is a multi-tenant building with other medical offices in it. We have at least one client, actually only one, Bo Lynham, who resides in that area. As it currently stands, he could be held in contempt, in violation of this injunction, if he tries to go to a dentist's office or something in that building. Moreover, Mr. Lynham maintains a ministry in a pro-life kind of context to this day. He could unknowingly run into somebody who claims they were a former patient of carefim and suddenly be hailed into court for, quote, intimidating or interfering with these individuals because they had, at some remote time in the past, obtained reproductive health services from carefim. We would suggest that the proper response here is to immediately dissolve and vacate the present injunction in toto. To the extent that... Let me ask you this. Suppose we did go with what you're advocating. Wouldn't fem health, carefim still be able to go back to the district court and ask for another injunction at that point? Well, they may, although, Your Honors, there is another provision here in face that we haven't gotten to yet, which is subdivision C1A of the Act, 18 U.S.C. Section 248, which is the right of action provision. And it states that generally any person aggrieved by reason of conduct prohibited in subsection A may commence a civil action, except such an action may be brought under subsection A1, which is the operative subsection that we're litigating under, only by a person involved in providing or seeking to provide or obtaining or seeking to obtain services in a facility. Carefim no longer has a facility. We would argue they no longer have standing to maintain the cause of action, and certainly for a new injunction. We could argue that, but suppose one of the doctors is now going to another jurisdiction that has a facility to perform abortions. So that person could conceivably have standing to get an injunction again. Certainly, Your Honor, and I see I'm out of time. So I guess what I'm getting at is there's still an opportunity for the district court to impose an injunction that's unrelated to a facility on remand if we were to vacate this injunction. Theoretically, yes. Okay, thank you. Thank you. Thank you. Good morning. Brianna Sprick-Schuster from Bassberry and Sims for Abilene Fem Health, doing business as Carefim. May it please the court. There is nothing preventing this court from affirming the preliminary injunction today. If the court is inclined to entertain defendant's improperly raised additional arguments, however, the appropriate relief is a stay of the appeal while the district court considers the factual information presently before it and determines whether and how to modify the injunction accordingly. Defense counsel has done his best to muddy the water, but the question before the court today is simple. Did the district court abuse its discretion when it granted the injunction? On the record before this court, both in the merits briefing and in the single additional fact raised by defendant's subsequent motion, there can be no answer other than no. And so Carefim respectfully requests that the court affirm the order granting the preliminary injunction. To be very clear, no one disagrees that the injunction needs to be modified, but weighing new evidence and the changed factual circumstances to determine the proper contours of a modified injunction is squarely the function of a district court. If everybody agrees that the injunction needs to be modified, why shouldn't we simply remand to the district court without making a ruling on the validity of the injunction as it was initially issued? We believe that would be fine. We also believe that this court could affirm today on the briefing before it. But if the court believes that there's reason to take into account these changed circumstances, a remand would be perfectly appropriate. The preliminary injunction is not moved. In their motion for- I guess for me the question is, should the existing injunction remain in place while the district court reassesses whether or not an injunction is warranted? And it seemed to me that all the district court did, as far as factual findings, is find that there was physical obstruction, maybe the force language by force, but it was all in the context of being at the facility itself, not being out in the community at someone's home or the grocery store or whatever. Is it fair to say that that was the factual basis for the preliminary injunction, that all the wrongful activity occurred at the facility, not anywhere else in the community? The evidence presented on preliminary injunction in the court focused on acts that occurred at the facility. At that time, CARIFM didn't need to present evidence. I guess what I'm concerned is that you don't really have a factual basis to have this injunction remain in place because the only facts that were found by the district court were related to activities at the facility itself. And because of that, we don't really have a- it's moot. I mean, there's no longer any facts that exist to support the injunction. There may be facts to support another injunction, but we don't keep this injunction in place while the district court is determining whether or not to issue a new injunction. Well, the irreparable harm that was considered by the district court is the same- it's the same irreparable harm. How can it be irreparable if the facility is no longer around? That was the irreparable harm, wasn't it, that it would cause people not to use the facility? Excuse me. I believe people not being able to access the facility- When you're looking at irreparable harm, from the district court's opinion, it seemed like what really swayed the court was the language defendants used, showing that they had no intention of abiding the law, that they believe themselves to be above the law, that they, quote, don't care what men in black robes or men in air-conditioned offices have to say. There's no reason to think- Throughout American history, the Declaration of Independence, one could say that King George III could have had a claim against Thomas Jefferson for use for invoking higher law to break away from Great Britain. So it's been used throughout American history, invocation of higher law. I don't understand how that speech can be punished by an act of Congress. Your Honor, there was no speech that was punished. What the district court did is it used defendants' own statements as evidence of their intent. So defendants in this case made statements on social media about what they were going to do. Then they did it, and then they made statements after the fact, showing that they would do it again, that they believed themselves to be above the law. Defendants here somehow believe that the only wrong that they did was that they weren't exactly sure what the law was. But they were trying to assist law enforcement officers. That type of vigilantism is always a problem. Is there any evidence that the defendants specifically targeted any of the plaintiffs in this case, any individuals that worked for the plaintiff? That evidence has not been developed because, again, there was no need. When the preliminary injunction was entered eight months ago, no one could foresee that the facility would close. So there wasn't a need to present evidence of that at the district court. That's the reason why the district court, as the fact finder, should be the one to consider new evidence in the changed circumstances. I agree that that can be appropriate on remand, but I guess I'm just having trouble, given that there's no specific threat to anyone, how this order can be read to extend beyond protection of the facility itself. Because I think that's what he was dealing with, not protection of individuals generally throughout the community. Because there just wasn't any evidence presented to the district court as to specific threats. Right. There's an overwhelming case law that supports that when circumstances change, while the appeal of a preliminary injunction is pending, it's for the district court to consider that new evidence, consider the changed circumstances, and modify the injunction as necessary to preserve the status quo that the injunction was originally intended to maintain. Under CARIFM's proposed modification, defendants will be no more or no less constrained than they were when the preliminary injunction was entered. So your proposed modification in front of us, well, your proposed modification in front of the district court is to delete the Part B, but retain Part A. Is that correct? Yes, Your Honor. So your opponent argues we should delete everything. If you both agree we should delete Part B, should we go forward and do that and then remand to the district court for consideration of modification of the preliminary injunction in other regards? I think procedurally what would be appropriate would be to remand the entire thing and for the district court to make that modification in the first instance. It wouldn't really make a difference here because at the district court we make the same representation that we agree with counsel that Part B should be stricken at this point in time, but I believe procedurally the district court is who is charged with modifying an injunction. And according to my perusal of the docket sheet this morning, the case is proceeding in front of the district court and there's a hearing scheduled at least in front of a magistrate judge in August or something like that? Correct. I want to touch on a little bit, I believe Judge Moore and Judge Bush, you both asked questions about whether the FACE Act can protect individuals against force or threat of force that's untethered from a clinic. And I want to make sure that I hit on that. The fact that the protective services are no longer provided in the facility, referenced in subsection B of the injunction, doesn't change the fact that they were provided in a facility at the time of the violation. So there's two different things going on here. Subsection A of the FACE Act specifies who can be protected and nowhere in subsection A does it mention the word facility. It says that it protects patients and providers who are seeking or providing reproductive health care services. Subsection C discusses who has standing to bring a private right of action and there it limits individuals who can bring private rights of action to those who are providing or obtaining services at a facility. And that requirement is met here. That argument is moot because the FACE Act claims that are part of the complaint underlying this preliminary injunction happened at a facility. So CAREFM has standing to bring this suit under the FACE Act and CAREFM's patients and providers are protected under the language of the FACE Act. There's precedent for enjoining defendants from violating the FACE Act untethered from a facility. For example, and this is in our brief, in USV White 893 FSEP 1423, that's a Central District California case, defendants were specifically enjoined from, among other things, using force or threats of force to interfere with or intimidate an individual provider. If the district court had intended the preliminary injunction to be restricted to protecting persons only while they were at CAREFM, subsection A of the preliminary injunction wouldn't have been necessary. In the White case, were there findings by the district court that there had been intimidation or threats of the doctor away from the facility? Yes. In that case, there were. Okay. Isn't that a difference with this case? We don't have those kinds of findings? We were lucky enough to get a preliminary injunction before that actually happened. The purpose of a preliminary injunction is to protect individuals before they're harmed. Yes, but there was no finding by the district court who entered the injunction of any threat or even a potential of harm to individuals away from the facility, was there? No. And again, Your Honor, that goes back to the appropriate place to present new evidence is to the district court. Right. But my question is whether you keep the injunction in place in the interim before you have that determination by the district court. That's really the issue on this appeal. So I would say, first of all, that there's no basis for this court to dissolve an injunction that didn't have... I mean, when we vacated an injunction, it's without prejudice. I mean, you can always come back and try to get another injunction. Yes, Your Honor. So, I mean, to me, my sticking point is that I just don't see in this record any basis to keep the injunction that was entered in place because there were no findings of fact that support an injunction that goes beyond the facility itself. Well, again, we believe that that's for the district court to... Well, yes, but I mean, why... There's a sort of a... You know, circumstances have changed. I mean, this appeal has sort of a limited purpose at this point. I mean... Yes, I agree. This court doesn't craft injunctions. No, which is why we didn't believe that this issue should be before this court in the first place. We told counsel, I believe, he attached those correspondences to his... I understand it's not your appeal, by the way. Sure. I just... I agree with you. We informed counsel that we thought the appropriate venue to seek a modification of the injunction was the district court. Counsel declined to join us in a motion to ask the district court to modify the injunction. So we sought that relief in the district court because, we agree with you, we don't think that this should be at this court at this juncture. Well, the defendants had a right to appeal the injunction, correct? Correct. So it's properly before our court, this appeal. It's a very tricky procedural area because there is this changed circumstance and the rules of civil procedure tell us, and the rules of appellate procedure, tell us that this is a situation that should be before the district court. The tricky wicket, if you will, was that the changed circumstance happened and the district court has not yet had a chance to react, to rule on the proposed modification. I'm not denying that the district court has an ability to rule. It should rule. But the question is whether we keep the injunction in place while the district court is determining whether to rule or not. I just don't see a factual basis for the injunction that was entered, given that it seems like it's been rendered moot, all the facts that were supporting the injunction. Sorry, that's not a question, that's just venting what I'm thinking. In March 2021, Defendant Chet Gallagher led dozens of OSA members, including Defendant Coleman Boyd, to blockade Carafem in Mount Juliet. Defendants Boyd and Gallagher are currently under indictment in the Middle District of Tennessee for their FACE Act violations that day. Additionally, Defendant Gallagher is currently serving a jail sentence for a FACE Act violation at a Planned Parenthood, sorry, I believe it's actually trespassing, at a Planned Parenthood in Florida. These defendants are repeat offenders. They regularly are at this facility. There's certainly evidence in the record that at least one of the defendants, Mr. Lynham, would go there multiple times a week since the facility opened, has had an ample opportunity to learn the providers, to know who they are, and there's every reason to believe, given these defendants' history, that they do pose a risk to Carafem's patients and providers. We respectfully ask that this Court affirm the preliminary injunction or, in the alternate, remand to the District Court to rule on the pending motion for modification. Thank you. Thank you. Briefly, returning to the question whether this injunction should be dissolved in its entirety, vacated, and allow the District Court to consider from a fresh slate, so to speak, we would suggest just as delayed is just as denied. There is no basis, as Judge Bush has indicated, no factual basis whatsoever to enjoin defendants from intimidating and interfering with individuals. Contrast this with the case that was cited by counsel, the U.S. against White. There is a voluminous factual record of repeated acts of force and threats of force. Again, this is a physical obstruction case. Acts of force and threats of force have nothing to do with this case. And the factual record was well developed there. By contrast here, there is not one mention of any interference with anyone away from the facility. Moreover, the interference that the Court found in this case was wholly predicated on the mere physical presence of defendants near the entrance. They didn't try to go in. They didn't block the entrance, et cetera. So I would suggest that U.S. v. White actually supports the notion that this Court should dissolve. With respect to the notion of defendants Gallagher and Boyd and other face violations, all those violations, so-called, occurred at a facility. There is not a hint in any record, and Lord knows they have searched everywhere they can find, of any suggestion that they have interfered with or intimidated others away from a facility. With respect to Bo Lynham, it is remarkable, shall we say, that they suggest that he is in a position where he could learn the identities of individuals there. Well, consider, Mr. Lynham has been ministering before the clinic closed outside that clinic on a weekly basis. What he's actually done is helped women who decided to keep their children, bought furniture for some who are impoverished and couldn't find a facility to live in. There is no suggestion in any record, and again, one may rest assured that CARIFM has left no stone unturned in their surveillance and attempts to find such evidence of Mr. Lynham doing anything improper. So what we're left with is mere speculation that the intimidation or interference may occur in the event someday one of the defendants actually learns the identity of one of these individuals. Your Honors, that is no basis for the entering of an injunction, and it is no basis for sustaining it. So we would urge this Court to dissolve and vacate the injunction in its entirety and let the District Court take it from a fresh slate. Thank you very much. Thank you. Thank you both for your argument. The case will be submitted.